Herman **SHANKS,** Plaintiff-Appellant,

v.

**WESTLAND EQUIPMENT AND PARTS COMPANY, formerly Westland Trailer Co., an Oregon corporation, Defendant-Appellee.**

No. 80–1489.

United States Court of Appeals, Tenth Circuit.

Argued Oct. 2, 1981.

Decided Jan. 21, 1982.

Joel E. Guthals of Wright, Tolliver, Guthals & Prater, P. C., Billings, Mont. for plaintiff-appellant.

Todd S. Welch of Godfrey & Sundahl, Cheyenne, Wyo., for defendant-appellee.

Before SETH, Chief Judge, and DOYLE, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Herman Shanks brought this diversity action in Wyoming against Westland Equipment and Parts Company (WEPCO), alleging that WEPCO was negligent in its design and manufacture of a trailer constructed for the highway transportation of motor vehicles. The trial court dismissed the complaint, finding insufficient minimum contacts to support *in personam* jurisdiction over WEPCO in the State of Wyoming. We reverse.

Shanks is a Montana resident who was employed as a truck driver by Convoy Company, an Oregon corporation doing business as an interstate common carrier in several states, including Wyoming. Shanks loaded and transported motor vehicles dispatched from Convoy's terminal in Laurel, Montana to points in Wyoming. The accident giving rise to this lawsuit occurred in Gillette, Wyoming, while Shanks was attempting to unload an automobile from the allegedly defective trailer.

Defendant WEPCO is an Oregon corporation having its principal place of business in a state other than Wyoming. WEPCO and Convoy are sister corporations whose stocks are owned by members of the same family. WEPCO manufactures trailers in Portland, Oregon using Convoy employees and some Convoy parts. Convoy bills WEPCO monthly for the Convoy labor and parts used by WEPCO to produce the trailers. From 1969 through 1978, WEPCO manufactured and sold a total of 165 transport trailers to Convoy, which uses the trailers in its interstate transportation business.

There is no evidence in the record showing that WEPCO maintained any offices, agents, or sales people in Wyoming, nor that WEPCO advertised or solicited trailer sales in Wyoming. However, from 1976–1978, WEPCO sold replacement parts for trucks and trailers to jobbers and fleets in Wyoming in the amount of $1067.08, although WEPCO contends it did not initiate the sales of replacement parts and did not advertise them for sale in Wyoming.

The trial court concluded that *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), controls resolution of the *in personam* jurisdiction issue in this case. Based on its reading of that case, the court granted WEPCO's motion to dismiss.

We disagree with the trial judge's conclusion that *World-Wide Volkswagen* is dispositive of the jurisdiction issue here. Whether a non-resident defendant has the requisite minimum contacts with the forum state to establish *in personam* jurisdiction must be decided on the particular facts of each case. *Premier Corp. v. Newsom*, 620 F.2d 219, 222 (10th Cir. 1980). Although the

Supreme Court's discussion of the considerations relevant to an analysis of *in personam* jurisdiction in *World-Wide Volkswagen* offers us guidance, the facts in that case are readily distinguishable from those here. Accordingly, the result there does not preclude a finding of *in personam* jurisdiction in the case *sub judice*.

■ As a preliminary matter, we note that "*in personam* jurisdiction may be obtained by a federal district court in any manner permitted by state law of the particular state in which the federal district court is held." *Premier Corp.*, 620 F.2d at 221. The Wyoming long-arm statute provides that "[a] Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution." Wyo.Stat. § 5–1–107 (1977). This statute extends state court jurisdiction in Wyoming to the constitutionally permissible limit. *Olmstead v. American Granby Co.*, 565 P.2d 108, 117 (Wyo.1977) (concurring opinion). Thus our only concern is whether minimum contacts exist between WEPCO and Wyoming so that maintenance of the suit there would not offend the due process clause of the Fourteenth Amendment. *World-Wide Volkswagen*, 444 U.S. at 291, 100 S.Ct. at 564.

In *World-Wide Volkswagen*, the Supreme Court concluded that due process barred the exercise of *in personam* jurisdiction by an Oklahoma court "over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma." 444 U.S. at 287, 100 S.Ct. at 562. We emphasize at the outset that the petitioners in *World-Wide Volkswagen* did *not* include the *manufacturer* or the importer of the automobile. In concluding that a regional distributor and a New York retailer could not be sued in Oklahoma, the Court found the following facts significant: the distributor and the retailer were fully independent corporations having only a contractual relationship with the manufacturer; neither of them shipped any product to Oklahoma; and there was no evidence that any automobile sold by them had ever entered Oklahoma other than the vehicle involved in the suit. 444 U.S. at 289, 100 S.Ct. at 563.

■ In the instant case, WEPCO, the manufacturer, and Convoy, the entity that used the trailer in the forum state, are related corporations owned by the same family. Although all the details of their interrelationship do not appear in the record, answers to interrogatories establish that WEPCO uses Convoy parts and labor to manufacture products to Convoy's specifications. WEPCO provides a substantial number, if not all, of the transport trailers used by Convoy in its business. Contrary to the situation in *World-Wide Volkswagen*, WEPCO trailers regularly enter the forum state as a result of Convoy's doing business there.

In *World-Wide Volkswagen*, the presence of the product in the forum state was an isolated occurrence resulting from fortuitous circumstances. 444 U.S. 295, 100 S.Ct. at 566. The Supreme Court distinguished that situation from facts somewhat analogous to the instant case:

"Hence if the sale of a product of a *manufacturer* ··... is *not* simply an isolated occurrence, but arises from the efforts of the manufacturer ... to serve, directly *or indirectly*, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Compare *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961)."

444 U.S. at 297–98, 100 S.Ct. at 567 (emphasis added). The Court's citation of *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (1961), is

particularly relevant. There, the Illinois Supreme Court upheld *in personam* jurisdiction over a nonresident manufacturer whose only contact with the forum state was "the fact that a product manufactured in Ohio was incorporated in Pennsylvania, into a hot water heater which in the course of commerce was sold to an Illinois consumer." 176 N.E.2d at 764. After noting the lack of evidence that the defendant had done any other business, directly or indirectly, in Illinois, the court stated:

"In the case at bar defendant does not claim that the present use of its product in Illinois is an isolated instance. While the record does not disclose the volume of [defendant's] business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, *result in substantial use* and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. *Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that* the purchase was made from an independent middleman or that *someone other than the defendant shipped the product into this State.*"

176 N.E.2d at 766 (emphasis added).

These observations are pertinent to the facts before us. WEPCO manufactures and sells trailers that it has specifically designed for interstate transport, to a sister corporation it knows will use them in Wyoming. Unlike *World-Wide Volkswagen*, it is not merely fortuitous that WEPCO trailers are used in Wyoming; it is a foregone conclusion that they will be so used. In addition, WEPCO sells replacement parts for its trucks and trailers to users in Wyoming. The facts in this case establish that WEPCO benefits from Wyoming laws within the meaning of *Gray v. American Radiator.*

"As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." 176 N.E.2d at 766.

Under the concept of minimum contacts, "[t]he relationship between the defendant and the forum must be such that it is 'reasonable . . . to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564 (citing *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). We believe it is reasonable here. Under the circumstances of this case, WEPCO "has clear notice that it is subject to suit [in Wyoming], and can act to alleviate the risk of burdensome litigation by procuring insurance, [and] passing the expected costs on to customers . . . ." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567. We hold that WEPCO has sufficient connection with Wyoming to support *in personam* jurisdiction in that state.

The trial court's order is reversed, and the case is remanded for further proceedings.