Ralph H. SHAW and Barbara Shaw
v.
AMERICAN CYANAMID COMPANY,
et al.
Civ. No. M–80–670.
United States District Court,
D. Connecticut.
March 12, 1982.

Shereen F. Edelson, Danaher, Lewis & Tamoney, Hartford, Conn., for defendant and third-party plaintiff Lyndal Chemical.

Jacob H. Channin, Hyman, Asbel, Channin & Harding, Hartford, Conn., for third-party defendant Delarich Chemical Corp.

## RULING ON THIRD–PARTY DEFENDANT DELARICH'S MOTION TO DISMISS

BLUMENFELD, Senior District Judge.

This case is a products liability action in which the plaintiffs, Ralph H. Shaw and Barbara Shaw, seek damages for injuries allegedly caused by Ralph Shaw's 25 years of exposure to formaldehyde fumes emitted from a resin used in the manufacture of cloth. Federal jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. The original five defendants impleaded as third-party defendants numerous suppliers of formaldehyde and formaldehyde-based products seeking indemnification for any liability they may incur as a result of this litigation. Presently before the court is the motion of third-party defendant Delarich Chemical Corporation (Delarich) to dismiss the third-party complaint filed against it by Lyndal Chemical Division, Millmaster Onyx Group, Keewanee Industries, Inc. (Lyndal) on the grounds that Delarich is not subject to the *in personam* jurisdiction of this court.

Delarich is a foreign corporation with its principal place of business in Clifton, New Jersey. It is in the business of buying, transporting and reselling heavy chemicals and has periodically sold and delivered formaldehyde to Lyndal and Lyndal's predecessor company at the Lyndal plant in Lyndhurst, New Jersey.

Delarich asserts that it does not solicit nor regularly transact business in the State of Connecticut and that all of its conduct relevant to this action occurred outside Connecticut, and that it therefore does not have sufficient contact with Connecticut to enable this court to assert jurisdiction over it.

Lyndal alleges in its complaint that
the Third-Party Defendant, Delarich Corporation is a foreign corporation with a principal place of business at Clifton, New Jersey,

Third-Party Complaint of Lyndal Chemical Division, ¶ 3.I., and that
the above corporations, at all relevant times, were authorized to do business in the State of Connecticut and/or were actually doing business in the State of Connecticut and the above corporations produced, manufactured or distributed formaldehyde or formaldehyde products with the reasonable expectation that they would be used or consumed in the State of Connecticut and such products were so used or consumed in this state.

*Id.* at ¶ 3.M. In addition, Lyndal has filed an affidavit with the court in which its vice-president states that "between 1955 and 1978 the Lyndhurst [New Jersey] site of Lyndal (Refined Onyx) purchased formaldehyde and UF85 from Delarich Chemical Corporation." Affidavit of John A. Komninos. This is the extent of Lyndal's allegations or proof on the issue of Delarich's contacts with Connecticut.

■ In response to a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure the party asserting jurisdiction must do more than rely on merely conclusory allegations like those pleaded in paragraph 3.M. of Lyndal's complaint. Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), a motion to dismiss under Rule 12(b)(2) is a test of the plaintiff's actual proof and, therefore, the court will consider affidavits submitted by the parties as well as the pleadings. *Bowman v. Grolsche Bierbrouwerij B. V.*, 474 F.Supp. 725, 728 (D.Conn.1979). The question of personal jurisdiction can be determined by affidavit without the need for oral testimony. *See cases cited at* 2A *Moore's Federal Practice* ¶ 12.09[3] n.21 at 2299. "[T]he motion will be denied only where the plaintiff can establish *prima facie* conduct by defendant sufficient to justify the exercise of *in personam* jurisdiction." *Bowman v. Grolsche Bierbrouwerij B. V.*, 474 F.Supp. at 728.

■ Lyndal, therefore, cannot defeat Delarich's motion to dismiss by merely asserting that its allegations raise issues of fact. *See Exchange National Bank of Chi-*

*cago v. Touche, Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976) (Rule 12(b)(1) motion).[1] Delarich has submitted an affidavit contradicting Lyndal's allegations concerning Delarich's contacts with Connecticut. Delarich states under oath that it does not do business in Connecticut on a regular basis and that from 1978 until 1981 it made only one isolated sale in Connecticut which was unrelated to this litigation.[2] Since Lyndal has not in its affidavit contradicted the facts presented by Delarich's affidavit,[3] the resolution of the personal jurisdiction issue will be based on the facts as presented by Delarich and those allegations in Lyndal's complaint uncontradicted by Delarich's affidavit.

Whether *in personam* jurisdiction exists in a diversity action is determined by reference to the law of the state in which the district court sits. *Arrowsmith v. United Press International*, 320 F.2d 219, 231 (2d Cir. 1963). "This requires a two-tiered consideration of (1) whether the appropriate state statute reaches the foreign corporation and (2) whether such statutory reach exceeds the constitutional 'minimum contacts' test required by due process." *McFaddin v. National Executive Search, Inc.*, 354 F.Supp. 1166, 1168 (D.Conn.1973). The dispositive question, therefore, is whether Delarich falls within the reach of Connecticut's long-arm statute, Connecticut General Statutes § 33–411, and if so,

1. Motions to dismiss under subsections (1) through (5) of Fed.R.Civ.P. 12(b) are all similarly treated as "speaking motions" analogous to a motion for summary judgment. *See* 2A *Moore's Federal Practice* ¶ 12.09[3] at 2297.

2. The affidavit of Eugene J. Grady, President of the Delarich Corporation states, in relevant part:

4. Delarich Corporation is a chemical corporation which is in the business of buying and reselling heavy industrial chemicals.

5. Delarich Corporation is not a Connecticut corporation and its principal place of business is located in Clifton, New Jersey.

6. Delarich Corporation does not solicit business in Connecticut.

7. Delarich Corporation does not regularly perform services or make sales in Connecticut.

8. Delarich Corporation has never availed itself of the privileges and benefits of Connecticut law.

9. Delarich Corporation has never advertised nor hired an advertising agency in Connecticut.

10. Delarich Corporation from 1978 through 1981 made one delivery in the State of Connecticut. The shipment was made in 1981 to Textile Prints, Inc. located in Branford, Connecticut.

11. In 1981 the gross sales for Delarich Corporation was approximately Five Million ($5,000,000.00) Dollars.

12. In 1981 the total sales made in Connecticut by Delarich Corporation was Eighteen Thousand One Hundred Seven ($18,107.00) Dollars. (.003621 of 1% of the gross sales for 1981).

13. Delarich Corporation has never shipped or distributed products or goods to the Rockville Processing Company, the employer of the Plaintiff, Ralph Shaw.

14. On a number of occasions from 1958 to the present, Delarich Corporation purchased and thereafter picked up formaldahyde [*sic*] from the Tenneco Chemical Plant in Garfield, New Jersey, E. I. Dupont, Griselli, New Jersey, Allied Chemical Corporation, Honewell, Virginia and Rohm and Haas Company, Philadelphia, Pennsylvania.

15. On a number of occasions from 1958 to the present, Delarich Corporation purchased and thereafter sold formaldahyde [*sic*] to Lyndal Chemical Plant (formerly known as New Jersey Refined Products and Onyx Millaster [*sic*] Corporation) in Lyndhurst, New Jersey.

16. At no time during 1981 did Delarich Corporation deliver, produce or distribute to the Lyndal Chemical Plant a formaldahyde [*sic*] resin or formaldahyde [*sic*] derivative.

3. An examination of the full text of Lyndal's affidavit reveals the absence of any assertions concerning Delarich's conduct in or transaction of business in Connecticut:

1) I am over the age of 18 and believe in the obligation of an oath.

2) I am currently Vice President of Lyndal Chemical, Division of Millmaster Onyx Group, for 1½ years.

3) I was associated with the predecessor company, Refined-Onyx, for 11 years—also then a Division of Millmaster Onyx Group.

4) Lyndal Chemical is the result of an internal merger in mid–1980 of Refined-Onyx and Chemical Processing of Georgia.

5) Through the records of the Purchasing Department I can state that we and predecessor company have transacted business with Delarich Chemical Corporation.

6) Based on my review of said records, I can state that between 1955 and 1978 the Lyndhurst site of Lyndal (Refined-Onyx) purchased formaldehyde and UF85 from Delarich Chemical Corporation.

whether this application of the state's long-arm jurisdiction is consistent with the requirements of due process as established by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. These matters are considered separately.

## I. The Long-Arm Statute

The Connecticut long-arm statute under which Lyndal asserts jurisdiction over Delarich provides, in relevant part, that:

(b) Every foreign corporation which transacts business in this state in violation of section 33–395 or 33–396 shall be subject to suit in this state upon any cause of action arising out of such business.

(c) Every foreign corporation shall be subject to suit in this state, . . . whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business . . . or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold . . . or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn.Gen.Stat. § 33–411.

### A. Conn.Gen.Stat. § 33–411(b)

■ Jurisdiction over Delarich cannot be sustained under Conn.Gen.Stat. § 33–411(b)

because Lyndal does not allege that this cause of action arose out of the minimal business which Delarich transacted in Connecticut.[4] Section 33–411(b) requires that a cause of action in which jurisdiction is asserted over a foreign corporation arise out of the business which the defendant transacted within the state. *See McFaddin v. National Executive Search, Inc.,* 354 F.Supp. at 1168; *Bross Utilities Service Corp. v. Aboubshait,* 489 F.Supp. 1366, 1371 (D.Conn.), *aff'd without opinion,* 646 F.2d 559 (2d Cir. 1980). Since the one shipment which Delarich has made to Connecticut is totally unrelated to this litigation it cannot be the basis of jurisdiction under section 33–411(b).

### B. Conn.Gen.Stat. § 33–411(c)

Lyndal contends that Conn.Gen.Stat. § 33–411(c) provides two grounds on which this court can base its jurisdiction over Delarich. It argues (1) that Delarich transacts sufficient business in Connecticut to sustain jurisdiction under section 33–411(c) and (2) that Delarich distributed goods to Lyndal with the expectation that some of its products would be used or consumed in Connecticut and that, therefore, jurisdiction can be asserted under section 33–411(c)(3).

Lyndal is apparently under the misconception that Conn.Gen.Stat. § 33–411(c) provides a basis for jurisdiction over any party transacting business within Connecticut regardless of whether the cause of action arises out of such business. Its brief suggests that the clause "whether or not such a foreign corporation is transacting or has transacted business in this state," contained within section 33–411(c), constitutes a basis of jurisdiction for any corporation doing business in Connecticut without regard to whether the cause of action arose out of those circumstances specifically enumerated in subsections (1) through (4).

---

**4.** Delarich has filed an affidavit in which its president states under oath that it never directly distributed any products to the Rockville Processing Company, the plaintiff's employer, and that its sales to Lyndal occurred in Lyndhurst, New Jersey. Lyndal's affidavit does not assert that any of the business it transacted with Delarich took place within Connecticut. The court, therefore, will accept as established for purposes of this motion the fact that none of Delarich's conduct relevant to this litigation took place within the State of Connecticut.

This construction is not supported by either the language of the statute or the case law which requires that the cause of action arise out of the defendant's Connecticut-related conduct. *E.g. McFaddin v. National Executive Search, Inc.,* 354 F.Supp. at 1168.

▪ Lyndal's assertion that jurisdiction exists specifically under section 33–411(c)(3) is based upon its allegation that Delarich had a reasonable expectation that its products would be used or consumed in Connecticut. Lyndal does not, however, contest the statements made by Delarich in its affidavit concerning the extent of Delarich's contacts with Connecticut. Read as a whole, Delarich's affidavit leaves no basis for an inference that it had reason to believe that its goods would be used or consumed in Connecticut. Lyndal cannot rest on the conclusory allegation in its complaint. Since Lyndal's affidavit contains no support for its allegation that Delarich had a reasonable expectation that its goods would be used in Connecticut, there is insufficient factual basis to sustain jurisdiction under section 33–411(c)(3).

## II. *Due Process*

▪ A broad or loose construction of section 33–411(c)(3) of Connecticut's long-arm statute can no longer be treated as a basis for jurisdiction consistent with the limits of due process. Mere foreseeability that a product will be used in Connecticut does not of itself justify an exercise of jurisdiction under the due process standard enunciated in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

▪ As the Supreme Court explained in *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945):

due process requires . . . that in order to subject a defendant to a judgment *in personam* . . . he have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

The defendant must "purposefully avail[ ] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

More recently the Court addressed the specific question presented here: whether the fact that a defendant could foresee the use of its product in a state constitutes sufficient contact with that state to sustain the personal jurisdiction of its courts. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *World-Wide Volkswagen* involved a products liability action in an Oklahoma court against the out-of-state seller and distributor of an automobile which became involved in an accident in Oklahoma. The Supreme Court held that due process does not allow the exercise of jurisdiction over a defendant whose sole contact with the forum is that its product could foreseeably cause injury within the state. *Id.* at 295, 100 S.Ct. at 566. The Court stated that

'foreseeability' alone has never been a benchmark for personal jurisdiction under the Due Process Clause. . . .

. . . .

This is not to say . . . that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.

*Id.* at 295, 297, 100 S.Ct. at 566, 567.

After *World-Wide Volkswagen* the courts which have sustained jurisdiction on the basis of a defendant's expectation that its goods would enter the forum state have done so in cases involving specific evidence that the defendant knew or should have known that its goods would be entering the forum jurisdiction. In *Shanks v. Westland Equipment & Parts Co.,* 668 F.2d 1165 (10th Cir. 1982), the court reversed the district court's dismissal under *World-Wide Volkswagen* because the defendant's relationship

with a sister corporation which did business in the forum state established its knowledge that the products it sold to the sister corporation regularly entered the forum state. The court in *Shanks* emphasized that the defendant was a manufacturer, not merely a wholesaler or retailer as in *World-Wide Volkswagen, id.*, and the case at bar.

The Ninth Circuit has affirmed a district court's assertion of jurisdiction over a foreign shipper which shipped defective goods into the forum state because the bill of lading conclusively showed the third-party defendant's knowledge that its product was destined for that state. *Plant Food Co-op v. Wolfill Feed & Fertilizer*, 633 F.2d 155 (9th Cir. 1980). The court upheld the trial court's jurisdiction because of the third-party defendant's "ability to control its contacts with the forum asserting jurisdiction and the benefits it derived from that contact." *Id.* at 159. It explained:

> Pillsbury [the third-party defendant] engaged in affirmative conduct to deliver its product into Montana [the forum state]. It was not brought into the forum by the unilateral act of another party. This contact with Montana was voluntary and financially beneficial to Pillsbury. When it knew the fertilizer was bound for Montana Pillsbury could have objected or made other arrangements if it found exposure to Montana's long-arm jurisdiction unacceptable.

*Id.* See also *Puerto Rico v. Colocotroni*, 628 F.2d 652, 669–70 (1st Cir. 1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981) (jurisdiction upheld because insurer knew its insured vessels frequented the waters of the forum state and encouraged such commerce).

In the case at bar there is nothing but a conclusory allegation to support Lyndal's assertion that Delarich expected that its goods would be used in Connecticut. The facts before the court reveal that Delarich sold formaldehyde to Lyndal in the State of New Jersey. Lyndal later sold products which allegedly contained this formaldehyde[5] to purchasers within Connecticut. Delarich engaged in no affirmative conduct to deliver its product into Connecticut. As in the *World-Wide Volkswagen* case, Delarich's product was brought into Connecticut solely because of the unilateral action of another party. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. Lyndal has presented no evidence of any conduct by Delarich which would make it reasonable for Delarich to "anticipate being haled into court," *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567, in Connecticut.

The case law supports the conclusion that under *World-Wide Volkswagen* "foreseeability" can be a basis for jurisdiction only where the record will support a conclusion that the defendant knew its goods would enter the forum state either in the specific instance giving rise to the litigation or on a regular enough basis that it "has clear notice that it is subject to suit there," *id.* at 297, 100 S.Ct. at 567. Only in such situations is it reasonable or fair to require the defendant to defend itself in the foreign jurisdiction. *Id.* at 292, 100 S.Ct. at 564.

In this case there is no evidence that Delarich knew or had reason to know that its products would ever enter Connecticut. Delarich's activities in Connecticut are minimal and unquestionably cannot be the basis of subjecting it to general personal jurisdic-

**5.** Lyndal contends that resolution of the personal jurisdiction question should be deferred until trial because Delarich has raised issues that are intertwined with the merits of this action. One of the arguments made by Delarich in support of its motion to dismiss is that it could not anticipate the eventual use of its product in Connecticut because it was altered by Lyndal prior to its eventual delivery in Connecticut. Memorandum of Law in Support of Motion to Dismiss at 7. Although the extent to which the product was altered may be an issue going to the merits, it does not necessarily follow that the issue of jurisdiction cannot be resolved at this stage. My holding that due process requires dismissal of the third-party complaint against Delarich is not based on any factual determination concerning Lyndal's alteration of the product and, therefore, there is no need to postpone decision until trial.

tion in this state. Its conduct out of which this cause of action arises took place outside the state. The fact that it might have foreseen the eventual use of its products in Connecticut is insufficient to sustain this court's jurisdiction consistent with the constitutional requirements of due process. *Id.* Delarich's Motion to Dismiss for lack of personal jurisdiction is granted, therefore, for the reasons stated above.

SO ORDERED.